## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TRUAX WILLIAM GLASS,
     *Plaintiff,*

     v.                           No. 3:21-cv-1486 (VAB)

BOZZUTO'S, INC.,
     *Defendant.*

### RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Truax William Glass ("Plaintiff") has sued his former employer, Bozzuto's, Inc. ("Defendant"), asserting claims for age discrimination under state and federal law. Compl., ECF No. 1. In 2020, when he was sixty-two years old, Mr. Glass was terminated from his position as Security Manager, purportedly because he consumed alcohol while providing security services at a charity fundraising event sponsored by Bozzuto's. *See id.* ¶ 25.

Bozzuto's has filed a motion for summary judgment, arguing that its stated reason for terminating Mr. Glass was not a pretext for age discrimination. *See* Def.'s Mot. for Summ. J., ECF No. 37.

Mr. Glass has not filed an opposition to the motion for summary judgment. Instead, he asks the Court to hold the motion in abeyance and reopen discovery so that he can conduct several depositions. *See* Pl.'s Mot. to Hold Mot. for Summ. J. in Abeyance to Conduct Disc., ECF No. 50 ("Mot. to Reopen Disc.").

For the following reasons, Defendant's motion for summary judgment is **GRANTED** as to Mr. Glass's federal claim, and the Court declines to exercise supplemental jurisdiction over his state law claim. Mr. Glass's motion to hold the summary judgment motion in abeyance and to reopen discovery is **DENIED**.

The Clerk of Court is respectfully requested to enter judgment accordingly and close this case.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.  Factual Background[1]

Mr. Glass was hired by Bozzuto's as Security Manager in October 2002, and he remained in this role until his termination in October 2020. Def.'s Substituted Rule 56(a)1 Statement of Material Facts ¶ 1, ECF No. 47 ("SMF"). As Security Manager, Mr. Glass reported to Michael Bozzuto, the president, CEO, and owner of Bozzuto's. *Id.* ¶ 2.

### 1.  Comments About Mr. Glass's Age and Retirement

On several occasions during Mr. Glass's employment, Mr. Bozzuto allegedly asked Mr. Glass when he was going to retire. First, in January 2017, Mr. Glass and Mr. Bozzuto were having a casual conversation in Mr. Glass's office when Mr. Bozzuto asked, "you're ready to retire, aren't you?" Ex. 1 to Def.'s Rule 56(a)1 Statement of Material Facts at 301:6–17,[2] ECF No. 39-1 ("Glass Dep."). Mr. Glass responded that he still had "plenty of years to go" before he retired. *Id.* at 301:15–17. Mr. Bozzuto pressed further, saying, "well, you're older than me. Why don't you retire?" to which Mr. Glass replied, "Michael, you're older than I am." *Id.* at 302:17–22.

Second, during another casual conversation a year or two later at a food show at Foxwoods, Mr. Glass asked Mr. Bozzuto about the possibility of being promoted. *Id.* at 304:2–

---

[1] Under Local Rule of Civil Procedure 56(a), "[e]ach material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Mr. Glass has not filed a statement of material facts under Local Rule 56(a)2. Thus, the Court will deem the facts contained in Defendant's Local Rule 56(a)1 Statement to be admitted, to the extent they are supported by the evidence.

[2] Deposition page and line numbers refer to the exhibit's internal page numbers rather than the ECF-generated numbers. Citations to other documents in the record refer to the ECF-generated page numbers.

14. In response, Mr. Bozzuto asked Mr. Glass, "well, aren't you going to retire?" *Id.* at 304:18–19. Mr. Glass again told Mr. Bozzuto that he did not plan to retire for "a few years." *Id.* at 304:20–22.

Finally, during a conversation in Mr. Bozzuto's office in the spring of 2020, Mr. Bozzuto asked Mr. Glass "are you thinking of retiring?" *Id.* at 385:17–386:8. Mr. Glass described this meeting as a casual discussion focused on the security of Mr. Bozzuto's personal vehicles. *Id.* at 305:24–25, 306:10–15. Mr. Glass told Mr. Bozzuto that he was not thinking about retirement. *Id.* at 386:9.

Mr. Bozzuto denies that he made any comments to Mr. Glass about his age or his retirement plans. *See* Ex. 15 to Def.'s Rule 56(a)1 Statement of Material Facts at 289, ¶ 21, ECF No. 39-1 ("Bozzuto Decl.").

### 2. The Dream Ride Event

The Dream Ride is an annual fundraising event sponsored by Bozzuto's and the Hometown Foundation, a charitable organization founded by Mr. Bozzuto. SMF ¶¶ 4–5. In 2020, the Dream Ride event was held at the Farmington Polo Grounds from August 21 to August 23. *Id.* ¶ 6.

Mr. Glass and the six supervisors who reported to him in the Bozzuto's Security Department provided security services at the 2020 Dream Ride event. *Id.* ¶ 7. According to Mr. Bozzuto, it was part of Mr. Glass's job to perform these services at the Dream Ride event. Bozzuto Decl. ¶ 12. In the weeks leading up to the Dream Ride event, Mr. Glass performed various functions to prepare for the event during his regular workday, such as meeting and coordinating with emergency services personnel, vendors, and his own supervisors at Bozzuto's. SMF ¶ 9. Mr. Glass also submitted reimbursement requests to and received payment from

Bozzuto's for expenses related to his preparation for the Dream Ride event. *Id.* ¶ 11. During the event itself, Mr. Glass coordinated with emergency personnel, oversaw private security guards, and monitored dispatch for security events. *Id.* ¶ 10.

After the Dream Ride event ended, the Director of Surveillance at Bozzuto's, Carlos Landrau, learned that Mr. Glass, several security supervisors, and other Security Department employees had been consuming alcohol in the conference room that served as their command center at the Farmington Polo Grounds. *Id.* ¶ 12–13. Mr. Landrau also discovered that they had covered up a security camera in the conference room in order to conceal their drinking. *Id.* Mr. Landrau reported the drinking and obstruction of the security camera to Mr. Bozzuto. *Id.* ¶ 16.

Mr. Bozzuto then decided to terminate Mr. Glass and the six security supervisors, who together comprised the entire management team for the Bozzuto's Security Department. *Id.* ¶ 16. In consultation with Vice President of Human Resources Scott Grove, Mr. Bozzuto concluded that Mr. Glass and the other security personnel had "violated company policy, engaged in unprofessional/inappropriate behavior and exercised poor judgment as leaders." *Id.*; Bozzuto Decl. ¶ 13. The Bozzuto's Associate Work Rules, which applied to Mr. Glass at the time, prohibited the "possession of . . . alcohol . . . while on Company time (including breaks, company functions)." SMF ¶ 17; Ex. 10 to Def.'s Rule 56(a)1 Statement of Material Facts at 265, ECF No. 39-1 ("Associate Work Rules"). At the time, Mr. Glass was an at-will employee who could be terminated at any time if he did not meet his manager's expectations, exhibited poor judgment, or violated company policy. SMF ¶ 3.

As noted above, Mr. Glass was sixty-two years old at the time of his termination. Glass Dep. at 313:8–11. The six security supervisors who were also terminated were twenty-nine, thirty, thirty-one, thirty-nine, fifty-nine, and sixty-six years old, respectively. SMF ¶ 23.

After Mr. Bozzuto terminated Mr. Glass and the remainder of the Security Department's management team, he assigned the duties of Security Manager to Mr. Landrau, while Mr. Landrau maintained his position as Director of Surveillance. Bozzuto Decl. ¶ 18. Mr. Landrau was forty-two years old at the time. Ex. 14 to Def.'s Rule 56(a)1 Statement of Material Facts at 284 ¶ 15, ECF No. 39-1 ("Landrau Decl.").

### B. Procedural History

On November 5, 2021, Mr. Glass filed his Complaint against Bozzuto's. Compl.

On January 6, 2022, Bozzuto's filed its Answer to the Complaint. Answer, ECF No. 11.

On January 11, 2022, the parties filed a Rule 26(f) Report. Report of Rule 26(f) Planning Meeting, ECF No. 12. On January 14, 2022, the Court issued a scheduling order, which provided that all discovery must be completed by September 1, 2022. Scheduling Order, ECF No. 13.

On March 14, 2022, Mr. Glass filed a motion for extension of time to serve his responses to Defendant's discovery requests. Pl.'s Mot. for Extension of Time, ECF No. 14. The Court noted that the motion was filed eight days after the deadline to respond to the discovery requests had passed and that the motion failed to comply with Local Rule 7. *See* Order, ECF No. 17. The Court nonetheless granted the motion *nunc pro tunc*, but it indicated that future motions for extensions of time that failed to comply with Local Rule 7 may be summarily denied. *See id.*

On August 29, 2022, Mr. Glass filed a motion to extend the discovery deadline for sixty days in order to depose three Bozzuto's employees. Pl.'s Mot. for Extension, ECF No. 21. Bozzuto's opposed the motion. Def.'s Obj. to Pl.'s Mot. for Extension, ECF No. 23.

The same day, the Court denied the motion without prejudice on the ground that Mr. Glass had not provided good cause for failing to have conducted these depositions within a timely fashion. *See* Order, ECF No. 24.

On October 31, 2022, Mr. Glass filed another motion seeking an extension of the discovery deadline for the purpose of conducting depositions. Pl.'s Am. Mot. for Extension, ECF No. 26. Bozzuto's once again opposed the motion. Def.'s Obj. to Pl.'s Am. Mot. for Extension, ECF No. 30.

On September 2, 2022, one day after the deadline for the close of discovery, the Court denied Mr. Glass's renewed motion, concluding that Mr. Glass had failed to show that the discovery deadline could not reasonably be met despite his diligent efforts to conduct discovery in this case. *See* Order, ECF No. 31. The Court noted that the parties had a settlement conference scheduled with Magistrate Judge S. Dave Vatti on October 3, 2022, and indicated that Mr. Glass could file a motion to reopen discovery if, after that conference, he continued to believe that some or all of the depositions sought were necessary to the prosecution of the case. *See id.*

On October 5, 2022, the case was reassigned from District Judge Sarah A. L. Merriam to District Judge Victor A. Bolden. Order of Transfer, ECF No. 35.

On November 1, 2022, the deadline set by the Court for filing dispositive motions, Bozzuto's filed a motion for summary judgment. Mot. for Summ. J., ECF No. 37; Mem. of L. in Supp. of Def.'s Mot. for Summ. J., ECF No. 38; Def.'s Rule 56(a)1 Statement of Material Facts, ECF No. 39.

On November 3, 2022, a month after the settlement conference with Judge Vatti, Mr. Glass filed a motion to reopen discovery and postpone the Court's decision on Defendant's motion for summary judgment. Pl.'s Mot. to Reopen Disc. and Postpone Decision on Mot. for Summ. J., ECF No. 40. Bozzuto's filed an objection to the motion on November 14, 2022. Def.'s Obj. to Pl.'s Mot. to Reopen Disc. and Postpone Decision on Mot. for Summ. J., ECF No. 42.

On November 14, 2022, the Court held a telephonic status conference with the parties, after which the Court *sua sponte* extended Mr. Glass's deadline to respond to the motion for summary judgment until December 2, 2022. Min. Entry, ECF No. 43.

On November 17, 2022, after obtaining permission from the Court, Bozzuto's filed a substitute memorandum in support of its motion for summary judgment and a substitute statement of material facts. Substituted Mem. of L. in Supp. of Def.'s Mot. for Summ. J., ECF No. 46 ("Mem."); SMF, ECF No. 47.[3]

On November 17, 2022, the Court denied Mr. Glass's motion to reopen discovery, noting "the availability of more focused relief for Plaintiff under Rule 56(d)." Order, ECF No. 48. The Court once again extended Mr. Glass's deadline for responding to the motion for summary judgment and invited him to include with his opposition an affidavit under Rule 56(d). *Id.*

Mr. Glass did not file an opposition to the motion for summary judgment. Instead, on December 22, 2022, he filed a motion to hold summary judgment in abeyance in order to conduct discovery. Mot. to Reopen Disc. Bozzuto's filed an objection to this motion on January 13, 2023. Def.'s Obj. to Pl.'s Mot. to Hold Summ. J. in Abeyance to Conduct Disc., ECF No. 52.

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere

---

[3] Defendant did not file substitute exhibits along with its substitute statement of material facts. Thus, the Court will cite the underlying exhibits attached to Defendant's original statement of material facts. *See* ECF Nos. 39-1–39-3.

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343, 347 (2d Cir. 2017) ("On a motion for summary judgment, the court must resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." (internal quotation marks omitted)). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III.    DISCUSSION

In his Complaint, Mr. Glass asserts claims for age discrimination under both the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60. Bozzuto's argues that it terminated Mr. Glass solely because of his misconduct at the 2020 Dream Ride event and that age had nothing to do with its decision. Mem. at 1–2. Thus, it contends, the Court should grant summary judgment on Mr. Glass's age discrimination claims.

Mr. Glass, meanwhile, argues that the Court should defer its consideration of Defendant's motion for summary judgment and reopen discovery so that Mr. Glass can take depositions of Mr. Bozzuto and several Bozzuto's employees. Satti Aff. ¶ 13, ECF No. 50 at 4.

The Court will address each issue in turn.

**A. The ADEA Claim**

**1. The Legal Standard**

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).

In the Second Circuit, ADEA discrimination claims are analyzed using the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified by the Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010).

> Under *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Once this burden is met, the defendant must then articulate some legitimate, nondiscriminatory reason for its action. The defendant need not persuade the court that it was actually motivated by the proffered reason[]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. When the employer meets its burden, the plaintiff can no longer rely on the prima facie case, but must prove that the employer's proffered reason was a pretext for discrimination.

*Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (alteration in original) (internal quotation marks and citations omitted).

In *Gross*, the Supreme Court held that, to sustain his ultimate burden, a plaintiff must prove that age was a "but-for" cause of the adverse employment action. 557 U.S. at 176. Thus, at the summary judgment stage, a plaintiff must present facts that, "taken in [his] favor, suffice to . . . [show that] a triable issue [exists] as to whether [his] age was a 'but for' cause of [his] termination." *Id.* (alterations in original) (quoting *Gorzynski*, 596 F.3d at 106). "The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employers *only* consideration, but rather that the

10

adverse employment action[] *would not have occurred without it.*" *Delaney*, 766 F.3d at 169.

(alteration in original) (quoting *Fagan v. U.S. Carpet Installation, Inc.*, 770 F. Supp. 2d 490, 496

(E.D.N.Y. 2011)).

      A district court must take "a case-by-case approach" to this determination, "examining

the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'"

*Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 143 (2000)). For example, "it is *permissible* for the trier of fact to

infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves*,

530 U.S. at 147. At the same time, while the Court "must ensure that employers do not act in a

discriminatory fashion," it does "not sit as a super-personnel department that reexamines an

entity's business decisions." *Delaney*, 766 F.3d at 169 (quoting *Scaria v. Rubin*, 117 F.3d 652,

655 (2d Cir. 1997)).

### 2.  Analysis

      Bozzuto's argues that it terminated Mr. Glass because of his misconduct at the Dream

Ride event, not because of his age. Mem. at 1–2. It argues that the evidence cited by Mr. Glass—

comments by Mr. Bozzuto related to Mr. Glass's retirement, Mr. Glass's replacement by the

younger Mr. Landrau, and Defendant's decision not to terminate a younger security guard who

also drank alcohol at the Dream Ride event—is insufficient to establish that Bozzuto's used Mr.

Glass's misconduct was a mere pretext for firing him. *See id.* at 20. Bozzuto's points to evidence

showing that Mr. Bozzuto's comments were made in casual conversations months or years

before Mr. Glass's termination, suggesting that they do not raise an inference of discrimination.

*See id.* at 32–40. Bozzuto's also argues that other evidence undermines any suggestion of

pretext, including that younger, similarly situated employees were also terminated, that many of

Mr. Bozzuto's other direct reports are older than Mr. Glass, and that Mr. Bozzuto himself is

older than Mr. Glass. *See id.* at 23–29.

The Court agrees.

### i. *Prima Facie* Case

Because a plaintiff's burden of establishing a *prima facie* case is "minimal," *Carlton v.*

*Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000), the Court will assume that Mr. Glass has

met this burden and proceed to the next step of the *McDonnell Douglas* analysis. *See Delaney*,

766 F.3d at 168 ("[B]ecause this burden [to establish a *prima facie* case] is 'not onerous,' we will

assume *arguendo* that Delaney has met this burden." (quoting *Texas Dep't of Cmty. Affs. v.*

*Burdine*, 450 U.S. 248, 253 (1981))).

### ii. Legitimate, Nondiscriminatory Reason

Assuming that Mr. Glass has established a *prima facie* case, the burden shifts to

Bozzuto's to "articulate 'some legitimate, nondiscriminatory reason' for its action." *Gorzynski*,

596 F.3d at 106 (quoting *McDonnell Douglas*, 411 U.S. at 802). "Discharging an employee for

violating company policies constitutes a legitimate and nondiscriminatory reason for terminating

employment." *Welland v. Citigroup, Inc.*, No. 00-cv-738 (NRB), 2003 WL 22973574, at *6

(S.D.N.Y. Dec. 17, 2003) (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir.

1997)), *aff'd*, 116 F. App'x 321 (2d Cir. 2004).

Here, Bozzuto's has presented evidence showing that consumption of alcohol on

company time violated its internal policies and that Mr. Glass could be terminated for violating

these policies. *See* SMF ¶¶ 17–18; Associate Work Rules, ECF No. 39-1 at 264 (noting that a

violation of some Work Rules, including the one prohibiting alcohol consumption, "may result in

12

employment termination on the first offense"). Thus, Mr. Glass's admitted consumption of alcohol with the other security personnel—and their attempts to cover up their behavior—satisfies Defendant's burden to articulate a legitimate, nondiscriminatory reason for terminating Mr. Glass. *See* SMF ¶¶ 14, 19.

Mr. Glass argues that his work at the Dream Ride event was performed on a volunteer basis and that the alcohol consumption policy therefore did not apply. *See* Compl. ¶ 21; Satti Decl. ¶ 9. But "an employer's belief that an employee violated company policy need not be accurate to serve as a legitimate reason for termination, as long as that belief was honestly held." *Saunders v. New Horizons Computer Learning Ctr. of Metro. New York*, No. 99-cv-9532 (AGS), 2002 WL 1067823, at *4 (S.D.N.Y. May 29, 2002), *aff'd*, 68 F. App'x 224 (2d Cir. 2003). Mr. Glass's disagreement with Bozzuto's over whether his work at the Dream Ride event was performed as part of his duties as Security Manager or on a volunteer basis does not show that his employer's belief was not honestly held. *See Oyelola v. Hartford Fin. Servs. Grp., Inc.*, No. 12-cv-01685 (VAB), 2015 WL 9239741, at *6 (D. Conn. Dec. 17, 2015) (failure to pass a licensing exam qualified as a legitimate reason for termination even though the employee did not consider it necessary to his job and it was not included in the employee's job description because the employer considered it to be essential and required other similarly situated employees to fulfill the requirement).

Furthermore, this is not a case where the employer's interpretation of its policies "was so lacking in merit as to call into question its genuineness." *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988). Mr. Glass prepared for the event during his normal workday, sought and received reimbursements for expenses related to the event, and wore shirts with "Bozzuto's Security" printed on them during the event itself. *See* SMF ¶¶ 9–11. This undisputed evidence

13

shows that both Bozzuto's and Mr. Glass viewed the Dream Ride event as part of Mr. Glass's

ordinary responsibilities as Security Manager. Bozzuto's also terminated six security supervisors

for violations of the same policy, indicating that the policy was not arbitrarily used to target Mr.

Glass. *See id.* ¶ 19.

Accordingly, there is no triable issue of fact as to whether Bozzuto's has put forward a

legitimate, nondiscriminatory reason for terminating Mr. Glass.

### iii. Evidence of Pretext

Since Bozzuto's has articulated a legitimate reason for its decision, Mr. Glass must

present evidence showing that this reason was a mere pretext for age discrimination. Under

*Gross*, he must show that there is at least a triable issue of fact as to whether age was a but-for

cause of his termination. In support of his claim, Mr. Glass relies on three categories of evidence:

(1) several comments and questions from Mr. Bozzuto relating to Mr. Glass's age and retirement

plans; (2) Mr. Glass's replacement with the forty-two-year-old Mr. Landrau; and (3) Bozzuto's

decision not to terminate a younger security guard who also consumed alcohol at the Dream Ride

event.

First, although an employer's comments can provide evidence of pretext, Mr. Bozzuto's

questions regarding Mr. Glass's retirement plans do not meet Mr. Glass's burden. Mr. Glass

points to three incidents over the course of more than three years in which Mr. Bozzuto asked

Mr. Glass if he was planning to retire.[4] *See* Glass Dep. at 300:8–307:8. On one of these

---

[4] Bozzuto's argues that the Court cannot consider these comments because they were made more than 300 days before Mr. Glass filed his administrative complaint and are therefore beyond the ADEA's statute of limitations. *See* Mem. at 30–31. But the only alleged discriminatory act that is subject to the statute of limitations is Defendant's decision to terminate Mr. Glass. These comments are offered merely as evidence that the termination was pretextual, not as actionable instances of discrimination in themselves. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding that the 300-day statute of limitations does not "bar an employee from using [untimely] prior acts as background evidence in support of a timely claim").

occasions, Mr. Bozzuto also indicated that he believed Mr. Glass was older than Mr. Bozzuto, a mistake that Mr. Glass corrected. *See id.* at 302:17–22.

In considering whether stray remarks such as these are probative of a discriminatory purpose, the Second Circuit considers the following four factors:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019) (quoting *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)). "Stray remarks by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision." *Crowley v. Billboard Mag.*, 576 F. Supp. 3d 132, 145 (S.D.N.Y. 2021) (internal quotation marks omitted).

Here, the comments were made by the ultimate decisionmaker, Mr. Bozzuto. The remaining factors, however, indicate that Mr. Bozzuto's remarks have little probative value. Mr. Bozzuto made the first comment more than four years before Mr. Glass was terminated, and Mr. Glass admitted during his deposition that he never suffered any adverse employment action after these comments until his termination after the Dream Ride event. *See id.* at 308:19–319:20. Even the most recent comment was made about six months before Mr. Glass was terminated, and district courts in this Circuit have found that just "a three-month lapse between alleged discriminatory statements and an adverse employment action is too long a gap to find the remark probative of discrimination." *Sethi v. Narod*, 12 F. Supp. 3d 505, 540 (E.D.N.Y. 2014) (collecting cases).

As for the content and the context of the remarks, "discussion of retirement is common in offices, even between supervisors and employees, and is typically unrelated to age discrimination." *Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 2d 431, 447 (S.D.N.Y. 2007), *aff'd*, 331 F. App'x 874 (2d Cir. 2009). Mr. Glass himself described each of the incidents as a "casual conversation," and he has presented no evidence tying these comments to any employment decisions. *See* Glass Dep. at 301:11, 304:11, 305:24.

Thus, Mr. Bozzuto's comments qualify as stray remarks that do not establish a genuine issue of material fact as to whether Mr. Glass's conduct at the Dream Ride event was a mere pretext.[5] *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468, 470 (2d Cir. 2001) (holding that a decision-maker's "pattern of derogatory statements" about the age of the defendant's employees, although sufficient to establish a *prima facie* case, was "not sufficient to establish that Delta's stated financial rationale was a ruse").

This conclusion is bolstered by the district court's analysis of similar evidence in *Hasemann v. United Parcel Service of America, Inc.*, No. 3:11-cv-554 (VLB), 2013 WL 696424 (D. Conn. Feb. 26, 2013). There, a supervisor who was involved in the decision to terminate the plaintiff after he violated his employer's policy regarding alcohol consumption had previously told the plaintiff that "the young guns are kicking your butt." *See id.* at *4. As in this case, the remark was made several months before the alleged discriminatory termination and was unrelated to the decisionmaking process. *See id.* at *7. The court concluded that the "'young guns' comment was too remote in time and context to support a reasonable inference that his

---

[5] In his motion to reopen discovery, Mr. Glass also cites a 2006 jury verdict against Bozzuto's on an age discrimination claim. *See* Ex. 1 to Mot. to Reopen, at 8–9, ECF No. 50. But any additional probative value that this fourteen-year-old evidence might provide is negligible. *See Delaney*, 766 F.3d at 170 ("Comments about another employee's age, removed from any context suggesting that they influenced decisions regarding Delaney's own employment, do not suffice to create a genuine issue of fact as to whether age was the but-for cause of Delaney's termination.").

termination was the result of age discrimination," even under the lenient standard for establishing a *prima facie* case. *Id.* at *8; *see also Silvers v. Wells Fargo Bank, N.A.*, No. 15-cv-6721 (KBF), 2016 WL 5875076, at *5 (S.D.N.Y. Oct. 7, 2016) ("Vargas's alleged inquiry into plaintiff's retirement plans or interest in leaving management are too attenuated from the termination in time and too distant from discrimination in content . . . to make out a prima facie case of age discrimination."). Even assuming that Mr. Bozzuto's remarks—which do not rise to the level of a pattern of derogatory comments—are sufficient for a *prima facie* case, they do not raise a triable question of fact as to whether age was a but-for cause of Mr. Glass's termination.

Second, Mr. Glass argues that his replacement by the forty-two-year-old Mr. Landau shows that the termination was driven by age discrimination. *See* Satti Decl. ¶ 8. "Generally, a plaintiff's replacement by a significantly younger person is evidence of age discrimination." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000). And while Mr. Landau was over forty, and therefore within the same protected class as Mr. Glass, "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). Nonetheless, "[t]he replacement of an older worker with a younger worker or workers does not itself prove unlawful discrimination." *Fagan v. New York State Elec. & Gas Corp.*, 186 F.3d 127, 134 (2d Cir. 1999).

Here, Mr. Glass's replacement with a younger employee carries little weight. Thirty-five percent of Mr. Bozzuto's direct reports were the same age or older than Mr. Glass, and fifty-five percent were at least fifty years old. Courts have held that this type of diversity "undermines Plaintiff's claim that Defendant[] acted with any discriminatory motive in terminating him." *Goonewardena v. New York Workers Comp. Bd.*, 258 F. Supp. 3d 326, 342 (S.D.N.Y. 2017),

*aff'd*, 788 F. App'x 779 (2d Cir. 2019); *see also Reeves*, 530 U.S. at 153 (noting that evidence showing "that respondent employed many managers over age 50" is "relevant," although "certainly not dispositive"). Furthermore, Mr. Bozzuto himself is two years older than Mr. Glass, and there is a "well-recognized inference against discrimination . . . where the person who participated in the allegedly adverse decision is also a member of the same protected class." *Hasemann*, 2013 WL 696424, at *8 (granting summary judgment to employer when "all of the individuals who played any role in Hasemann's termination were older than Hasemann"). This additional evidence regarding the age dynamics at play in Mr. Glass's termination, though not dispositive by itself, negates whatever inference may be drawn from the mere fact that Mr. Glass's responsibilities were taken over by an employee who was twenty years younger.[6]

Third, Mr. Glass points out that Bozzuto's failed to terminate a younger security guard who also consumed alcohol at the Dream Ride event. *See* Glass Dep. at 318:25–319:20. "[A] showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group" can "rais[e] an inference of discrimination," suggesting that the employer's proffered reason for a termination was a mere pretext. *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (internal quotation marks omitted). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct. *Id.* (internal quotation marks omitted).

Here, Mr. Glass's emphasis on the younger security guard who was not terminated ignores the six security supervisors—five of whom were younger than Mr. Glass and four of

---

[6] The evidence also shows that Mr. Glass was not replaced outright, but that Mr. Bozzuto assigned his duties to Mr. Landrau while Mr. Landrau maintained his position as Director of Surveillance. Bozzuto Decl. ¶ 18. Nonetheless, the Court will construe this evidence in the light most favorable to Mr. Glass and infer that Mr. Glass was, in fact, replaced by Mr. Landrau.

whom were under age forty—who were terminated for the same misconduct at the Dream Ride event. As supervisors and fellow members of the Security Department's management team, these six employees were more similarly situated to Mr. Glass than the security guard was. *See Johnson v. Schmid*, 750 F. App'x 12, 17 (2d Cir. 2018) ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury, but here no reasonable jury could conclude that Johnson was sufficiently similar to the purported comparators. They were *instructors* while he was a social worker *trainee*—they were supervisors, and he was their student." (internal quotation marks and citation omitted)). Furthermore, Mr. Glass opined in his deposition that the security guard kept his job because he was the nephew of the general counsel and the son of the Southington Police Chief, indicating that the security guard's age was not the cause of his more lenient treatment after the Dream Ride event. *See* Glass Dep. at 319:7–11. "Thus, a reasonable juror could not infer from the evidence in the record that younger employees were treated more favorably" than Mr. Glass was. *Mendillo v. Prudential Ins. Co. of Am.*, 156 F. Supp. 3d 317, 340 (D. Conn. 2016) (noting that "at least one younger Customer Service Representative was treated just as Ms. Mendillo was for comparable conduct").

In fact, Defendant's termination of the younger security supervisors strongly suggests that the Dream Ride misconduct was not a pretext for age-based discrimination. *See Silvers*, 2016 WL 5875076, at *5 ("It is also undisputed that the bankers who engaged in company policy violations under plaintiff's management were terminated the same day as plaintiff [and] that both of these bankers were significantly younger than plaintiff . . . . These undisputed facts support the inference that plaintiff's termination was motivated by the repeated violations of company

policy that occurred under plaintiff's management. Failure to rebut these facts requires dismissal on summary judgment.").[7]

After considering all of the evidence discussed above, the Court concludes that there is no genuine issue of fact as to whether age was a but-for cause of Mr. Glass's termination. Bozzuto's has offered a legitimate, non-discriminatory reason for its decision in Mr. Glass's admitted consumption of alcohol at the Dream Ride event and his attempts to conceal that conduct. This nondiscriminatory reason is well-documented in the record, and it is significantly bolstered by Defendant's termination of the six other members of the Security Department's management team, four of whom were under the age of forty, for the same reason. Each piece of evidence relied upon by Mr. Glass—stray remarks that were made months or years before his termination, Mr. Glass's replacement by a younger employee, and Defendant's decision not to terminate a younger security guard—while not irrelevant to the issue of pretext, has only minimal probative value. Even when considered together, this evidence cannot overcome Defendant's strong showing that its stated reason for terminating Mr. Glass was legitimate. *See Getschmann v. James River Paper Co.*, 822 F. Supp. 75, 78 (D. Conn.) ("Since defendant's evidence of a legitimate business reason is so overwhelming, these remarks are too slender a reed to carry the weight of the charge in this case against the evidence which refutes it." (internal quotation marks omitted)), *aff'd*, 7 F.3d 221 (2d Cir. 1993).

---

[7] Although there may have been some confusion, Mr. Glass appeared to admit in his deposition that he believed he would have been fired because of his conduct at the Dream Ride event even if he had not been sixty-two years old at the time. *See* Glass Dep. at 315:23–316:3 ("Q: If you weren't sixty-two years old at the time of your termination, do you believe you wouldn't have been fire? A: No. Q: You don't believe you would have been fired? A: No. I believe I would have been fired, yes."). A plaintiff's own beliefs regarding the basis for his termination ordinarily do not carry much weight in assessing an employer's motivation. *See Sethi*, 12 F. Supp. 3d at 536 ("[A] plaintiff's mere subjective belief that he was discriminated against . . . does not sustain a . . . discrimination claim." (internal quotation marks omitted)). Nonetheless, Mr. Glass's apparent admission reinforces the Court's conclusion that there is no triable issue of fact as to whether the Dream Ride misconduct was a pretext used to conceal age discrimination.

Accordingly, the Court will grant Defendant's motion for summary judgment as to Mr. Glass's ADEA claim.

### B.  The CFEPA Claim

After granting summary judgment to Bozzuto's on Mr. Glass's federal claim, the Court must decide whether to exercise supplemental jurisdiction over the remaining state law claim.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

The exercise of supplemental or pendant jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari v. N. Y. Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *see also Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction. . . . '[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity.'" (quoting *Jones v. Ford Motor Credit Co.*, 385 F.3d 205, 214 (2d Cir. 2004))).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise supplemental jurisdiction over the

remaining state-law claims." *Kolari*, 455 F.3d at 122; *see also Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) ("[F]ederal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment . . . .").

But as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction 'in the usual case' clearly does not mean that the balance of the factors always points that way." *Catzin*, 899 F.3d at 86. Thus, "[w]hen § 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

Here, the balance of factors favors declining to retain supplemental jurisdiction. Principles of comity indicate that Connecticut courts are better suited to evaluate the merits of Mr. Glass's CFEPA claim. Although the state law claim is substantially similar to the federal one, this case implicates unsettled questions of state law regarding the standard that applies to age discrimination claims under CFEPA.[8] Thus, Mr. Glass's claims "may be vindicated, if at all, in state court under traditional state law principles." *Giammatteo v. Newton*, 452 F. App'x 24, 30 (2d Cir. 2011) (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).

### C.  The Motion to Reopen Discovery

"[S]ummary judgment 'may be inappropriate where the party opposing it shows . . . that he cannot at the time present facts essential to justify his opposition.'" *Trebor Sportswear Co. v.*

---

[8] The Connecticut Supreme Court has not addressed whether the but-for standard set forth in *Gross* applies to age discrimination claims under the CFEPA. One Connecticut Appellate Court has, however, held that the more lenient motivating factor standard continues to apply to state law age discrimination claims even after *Gross*. *See Wallace v. Caring Sols., LLC*, 213 Conn. App. 605, 623 (2022). Assuming that the motivating factor standard governs Mr. Glass's CFEPA claim, Connecticut courts will be better able to apply it to the facts of this case.

*The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (quoting Fed. R. Civ. P. 56(e) advisory

committee's note to 1963 amendment). Before granting summary judgment, a court must ensure

that the non-moving party "had the opportunity to discover information that is essential to his

opposition." *Anderson*, 477 U.S. at 250 n. 5. "But the trial court may properly deny further

discovery if the nonmoving party has had a fully adequate opportunity for discovery." *Trebor*

*Sportswear*, 865 F.2d at 511.

Rule 56(d) seeks to account for these principles by providing that a court may defer

consideration on a motion for summary judgment and allow further discovery "[i]f a nonmovant

shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to

justify its opposition." Fed. R. Civ. P. 56(d). Here, the Court offered Mr. Glass the opportunity to

seek relief under Rule 56(d) by extending the deadline for filing an opposition to Defendant's

motion for summary judgment and indicating that "Plaintiff may include with its opposition an

affidavit under Rule 56(d)." Order, ECF No. 48. The Court specified that the affidavit "must

include 'the nature of the uncompleted discovery; how the facts sought are reasonably expected

to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts;

and why those efforts were unsuccessful.'" *Id.* (quoting *Paddington Partners v. Bouchard*, 34

F.3d 1132, 1138 (2d Cir. 1994)). In doing so, the Court sought to balance the burden and expense

to Bozzuto's of reopening discovery after the company had filed a timely motion for summary

judgment against Mr. Glass's asserted need for further discovery and the Second Circuit's "oft-

stated preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d

90, 95 (2d Cir. 1993).

Mr. Glass has not taken advantage of the opportunity offered by the Court. He has not

filed an opposition to the motion for summary judgment or a Local Rule 56(a)2 Statement of

Facts, which might have clarified for the Court the factual gaps that the requested discovery would have filled. He has filed an affidavit describing the discovery sought and the factual issues to which each requests related, but it does not provide a basis for deferring resolution of the motion for summary judgment. The affidavit does not set forth the efforts that Mr. Glass made to obtain the requested discovery during the nearly nine months between the issuance of the scheduling order and the close of discovery. *See* Scheduling Order, ECF No. 13 (Jan. 14, 2022) (setting a September 1, 2022, close of discovery deadline). By way of explanation, the affidavit incorporates Mr. Glass's prior motion for an extension of time. *See* Pl.'s Am. Mot. for Extension, ECF No. 26. As Judge Merriam noted, however, that motion does not state "what efforts, if any, [Plaintiff's counsel] has made to conduct discovery in this case." Order, ECF No. 31 (denying the motion for an extension of time). Instead, it "described his efforts litigating *other* matters over the past year." *Id.*

The Court recognizes that Plaintiff's counsel was effectively "operating as a one-person law firm" for much of the period that this case has been pending and that the time provided for discovery was relatively short. Pl.'s Am. Mot. for Extension at 1. Nonetheless, the Second Circuit has held that parties had an adequate opportunity for discovery in cases with even shorter timeframes. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (finding no abuse of discretion where the district court denied a motion to reopen discovery and granted a motion for summary judgment when the appellant had seven months to conduct discovery); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927 (2d Cir. 1985) (collecting cases in which summary judgment was granted after between five and eight months of discovery). Furthermore, "[c]laims of a need for more discovery by a party who has diligently used the time

available . . . should be given more favorable consideration than claims by one who has allowed months to pass unused," and Mr. Glass has not made the required showing of diligence. *Id.*

Finally, Mr. Glass has offered "no persuasive basis" from which the Court could "conclude that further discovery would yield proof" that Mr. Glass's age was a but-for cause of Defendant's decision to terminate him. *Trebor Sportswear*, 865 F.2d at 512. As explained above, Bozzuto's has put forward compelling evidence showing that it had a legitimate, nondiscriminatory reason for terminating Mr. Glass, and Mr. Glass has not explained how the discovery he seeks is reasonably likely to refute this evidence.

Mr. Glass contends that the requested discovery may raise a material fact as to the "alleged legitimacy of the application of a Bozzuto Company Policy concerning alcohol consumption at a non-work related function." Satti Decl. ¶ 9. But he offers no concrete basis for believing that the requested discovery will refute the substantial evidence showing that both Mr. Glass and Mr. Bozzuto viewed Mr. Glass's work at the Dream Ride event as part of Mr. Glass's ordinary duties as Security Manager. In another request related to the Dream Ride event, Mr. Glass seeks information regarding any younger employees who consumed alcohol and were not terminated. *Id.* ¶ 10. Yet the sworn declaration of Douglas Vaughan already states that there were no management-level employees younger than Mr. Glass who were not terminated for engaging in the same misconduct, and the Court has already explained that non-manager employees were not similarly situated to Mr. Glass. *See* Ex. 16 to Def.'s Rule 56(a)1 Statement of Material Facts at 301:6–17, ECF No. 39-1 ("Vaughan Decl..").

Mr. Glass also seeks to depose Mr. Bozzuto, "who questioned Mr. Glass about his intentions to retire, during the last year of his employment and several months prior to his termination." *Id.* ¶ 7. Although the testimony of the decisionmaker in an employment

discrimination case may certainly be relevant, the Court has explained that Mr. Bozzuto's comments were too remote in time and context to raise a significant inference of discrimination in Mr. Glass's termination. Mr. Glass has not offered "persuasive basis" from which the Court could conclude that Mr. Bozzuto's recollection of these conversations would offer more compelling evidence of discrimination than Mr. Glass's recollection does. *See Trebor Sportswear*, 865 F.2d at 512.

Accordingly, because Mr. Glass has not established that additional discovery is warranted under Rule 56(d), the Court will deny his motion to re-open.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED** as to Mr. Glass's federal claim, and the Court declines to exercise supplemental jurisdiction over his state law claim. Mr. Glass's motion to hold the summary judgment motion in abeyance and to reopen discovery is **DENIED**.

The Clerk of Court is respectfully requested to enter judgment accordingly and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of May, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE